### In re AMERICAN CANDY MFG. CO.

(District Court, E. D. New York. February 11, 1918.)

1. BANKRUPTCY ⬤➔205—TRUSTEE—CREDITORS—RIGHTS.

Save in so far as the trustee is given the rights of a judgment creditor as of the date of the filing of the petition, and levies, judgments, attachments, or other lien obtained through legal proceedings within four months of bankruptcy are invalidated by Bankruptcy Act July 1, 1898, c. 541, § 67f. 30 Stat. 564 (Comp. St. 1916, § 9651), the trustee in bankruptcy, and

the creditors through him, obtain no greater rights against those having enforceable liens than the bankrupt would have had in their place.

2. BANKRUPTCY ☞205—LIENS—PRIORITIES.

If a judgment or other lien has been acquired within four months of bankruptcy, and is vacated, the claim of the trustee is superior to that of any person claiming under some other subsequent transfer or lien, even though the latter be innocent of any intent to obtain a preference, for such claimant would take subject to the lien invalidated by the adjudication in bankruptcy.

3. BANKRUPTCY ☞188(3)—CONSTRUCTIVE TRUSTS—EQUITABLE LIEN—NATURE OF.

The equitable rights of claimants, as creditors of another corporation whose property the bankrupt acquired, on the theory that it was transferred subject to a trust ex maleficio, cannot be treated as a valid lien superior to the right of general creditors of the bankrupt, until by some legal proceeding it has become attached to the property of the bankrupt.

4. BANKRUPTCY ☞198—LIENS—PRIORITIES.

The bankrupt, with knowledge of its liabiliity for false representations, acquired the property of another corporation. Claimants within four months of bankruptcy recovered judgment against the bankrupt's transferor and execution was returned nulla bona. Meantime all of the property of the bankrupt was attached, and the attachment lien was discharged by the bankruptcy proceeding, because perfected within four months of bankruptcy. *Held* that, as claimant's right to follow such property into the hands of the bankrupt after transfer on the theory of a trust ex maleficio, was, until perfected by some legal process against the bankrupt and return nulla bona of execution against the transferor corporation, inferior to the rights of general creditors of the bankrupt, claimant's lien depending as it did on judicial process had within four months was under Bankruptcy Act, § 67f, discharged by the adjudication.

In Bankruptcy. In the matter of the bankruptcy of the American Candy Manufacturing Company. On exceptions of the trustee to the report of the special master, sustaining the contention of certain claimants to an equitable lien on property in the possession of the bankrupt. Report set aside, and claimants held to be general creditors of the bankrupt.

Merchant, Olena & Merchant, of New York City, for petitioner.

Harry H. Schutte, of Brooklyn, N. Y., for trustee.

CHATFIELD, District Judge. This application presents a close question of law upon an admitted state of facts. Franklin's Incorporated transferred all its assets to the American Candy Manufacturing Company on the 12th day of April, 1915. Each corporation had the same officers, the same directors, and the same stockholders. The American Candy Manufacturing Company had knowledge, therefore, of all equities attaching to the property purchased. In addition, the American Candy Manufacturing Company, by action of its board of directors, agreed to assume all liabilities of the Franklin's Incorporated; but this agreement was not included in the bill of sale and does not in any event enter into the question presented.

It appears that the Franklin's Incorporated had sold so-called gold notes upon fraudulent representations, and soon after the time of transfer to the American Candy Manufacturing Company proceedings

were sought to recover because of the fraud involved in the sale of these gold notes. Other creditors of the Franklin's Incorporated also were seeking to collect therefrom, and these facts were of course known to the same men as officers and directors of the American Candy Manufacturing Company.

It appears from the record that substantially all of the creditors of the American Candy Manufacturing Company, in bankruptcy, were creditors of the Franklin's Incorporated, who have proven their claims in bankruptcy against the American Candy Manufacturing Company as the successor of Franklin's Incorporated, and have acted upon the theory, which was in fact correct, that the American Candy Manufacturing Company and all its property was liable for all claims which had been existing against its predecessor. Of the Franklin's creditors, however, two have refused to make claim against the American Candy Manufacturing Company directly, and have sought to follow the property transferred to it as property of the Franklin's Incorporated, as transferred subject to a trust ex maleficio or subject to equitable liens by virtue of judgments and executions issued against Franklin's Incorporated.

Upon the foregoing statement, a short calendar of events may make the position clear:

April 12, 1915. Franklin's Incorporated transferred to American Candy Manufacturing Company.

October 14, 1915. Judgment in Albany county, N. Y., by Moore v. Franklin's Incorporated.

October 20, 1915. Judgment docketed in Queens county, where the property of the American Candy Manufacturing Company was located.

October 24, 1915. Execution against Franklin's Incorporated issued to sheriff of Queens county.

November 5, 1915. Judgment against American Candy Manufacturing Company by York Bradford Company, in Supreme Court, Kings county.

November 6, 1915. Judgment docketed in Queens county.

November 9, 1915. Execution issued to sheriff of Queens county against American Candy Manufacturing Company.

November 9, 1915. Attachment in suit by Giles Company v. American Candy Manufacturing Company in Queens county levied upon all property of American Candy Manufacturing Company.

November 19, 1915. Petition in bankruptcy filed against American Candy Manufacturing Company, followed on December 2, 1915, by adjudication. Under this a receiver took possession upon December 4, 1915.

January 6, 1916. Trustee in bankruptcy elected.

December 24, 1915. Sheriff of Queens county returned the execution against Franklin's Incorporated nulla bona.

On January 1, 1916, a second execution was issued, which was also returned unsatisfied on February 29, 1916, and in the meantime, on January 18, 1916, a petition of the judgment creditor, Moore, was presented to this court, asking that the property in the hands of the receiver, and subsequently the trustee in bankruptcy, be declared her property to the extent of paying the amount of her claim in the sum of $2,271.12, with interest. A subsequent sale by the trustee has produced a fund for distribution, and Mrs. Moore's and Mrs. Hanrahan's claims, as well as those of the other creditors, are now urged against this fund.

The second creditor, Mrs. Hanrahan, obtained her judgment upon the 14th day of October, 1915, and issued execution to the sheriff of

Queens county against Franklin's Incorporated on November 16, 1915, which, it will be noted, was seven days after the attachment and levy thereunder upon the property of the American Candy Manufacturing Company.

In general, the claim of the two creditors who are seeking the property under their rights through Franklin's Incorporated is based upon the proposition that the trustee and the creditors of the estate stand in the shoes of the bankrupt, that they take the property subject to all equities which were valid as against the bankrupt, up to the time of filing the petition in bankruptcy, and that the amendment of 1910, giving the trustee the position of a judgment lienor, and the provision by which a lien obtained within four months, and voidable in the bankruptcy proceedings, may be preserved for the benefit of the estate, upon the application of the trustee, do not affect Mrs. Moore and Mrs. Hanrahan as prior equitable lienors, and do not give the trustee a superior equity to those obtained by these two judgment creditors of Franklin's Incorporated, through their equitable lien arising from the transfer of the property of Franklin's Incorporated to the American Candy Manufacturing Company, under the circumstances previously stated. It is admitted that these were of such a nature as to impress a trust ex maleficio in the hands of any person except a bona fide holder, if bankruptcy had not intervened, and if no superior or prior equity attached.

The trustee contends that Moore and Hanrahan are entitled at most, to equality with those creditors who have presented their claims against the American Candy Manufacturing Company, and that these ladies have no superior lien to that of the trustee. The special master has reported in favor of the claimant's contention, the trustee has excepted, and the present motion comes here upon his exceptions to these reports.

[1] It is well settled that the trustee, as such, and the creditors through him, obtain no greater rights against those having title or liens enforceable in bankruptcy than the bankrupt would have had in their place. In other words, they stand in the shoes of the bankrupt, except in so far as the trustee is given the rights of a judgment creditor, as of the date of filing the petition (section 67f) and in so far as the bankruptcy wipes out their liens. Hence property to which title has not actually passed, or vested in the bankrupt, cannot be added to the bankrupt estate, either by the trustee or the creditors, any more than a sheriff, by levying execution upon the bankrupt's property, could take that of a third party, which happened to be in the bankrupt's possession.

[2] It is also settled that, if a judgment or other lien has been acquired within four months of bankruptcy and is vacated by bankruptcy, the claim of the trustee would be superior to that of any person claiming under some other subsequent transfer or lien, even though the latter be innocent of any intent to obtain a preference. Such a claimant would take subject to any lien which would pass to the trustee in bankruptcy, and which could be preserved by order of the court. Such a claim would still be liable to all the rights of other creditors created by the adjudication in bankruptcy.

[3, 4] It will be immediately noted that the issuance and return unsatisfied of an execution against the original judgment debtor would be a prerequisite of success in an action to set aside the transfer, for there would be no need of such action if the judgment could be paid in any other way from the property of the debtor. But the issuance of the execution or the return unsatisfied would not change the relations between the person claiming the equitable lien, who was seeking to trace the property affected, and the trustee in bankruptcy, who admittedly had the property. In other words, if in the present instance the judgments could have been satisfied from any other property, there would be no claim on the judgment against the bankrupt. But there was no other property of the Franklin's Incorporated, and hence the issuance of execution is merely proof that the two claimants have provable claims in bankruptcy against the American Candy Manufacturing Company.

The question comes down to a proposition upon which both counsel have agreed, viz., which equity was prior, or whether an equity now exists making the two claimants first entitled to the property in the hands of the trustee. A lien otherwise voidable, and which under section 67f may be preserved for the benefit of the estate, must be a lien obtained against the bankrupt. In the present instance, the attachment by the Giles Company upon November 9th, and the judgment of the Bradford Company, with execution issued the same day, would be a superior lien to any other levy or legal lien by which possession of the property of the American Candy Manufacturing Company could have been taken before the filing of the petition in bankruptcy. This would be true, even if the other lien had been that of an execution against the American Candy Manufacturing Company itself, but such subsequent lien would also have been vacated—that is, discharged by the adjudication in bankruptcy; and it is difficult to conceive of a situation where the preservation of the prior lien for the benefit of the estate would be of any advantage, unless it had to do with the possession of the property to defeat claims which had not yet advanced to a point where they could be treated as valid legal liens and subject to execution or attachment.

In the present case all liens created by legal proceedings within four months of bankruptcy were vacated. If the legal lien of the attachment was not vacated, it would be superior, for the protection of the estate against any other legal lien, using that term in distinction from the so-called equitable lien, and it is much superior to the so-called equities of the equitable lien, for otherwise the equitable lien would attach through proceedings at law, but would not be vacated or discharged by the adjudication in bankruptcy.

We come back to the fundamental questions, as to whether the bankrupt's property is subject, in the hands of the trustee, to all equities which would have been enforceable against the bankrupt itself, if bankruptcy had not intervened, and whether those equities are wiped out by the four months provision, in the present case.

As to the first question, it is evident that the equitable rights of the claimants to follow the assets of Franklin's Incorporated could not be treated as a valid levy, superior to the general creditors, until by some

legai proceeding they became attached to the property of the American Candy Manufacturing Company. No such rights were perfected by legal process until within four months of the bankruptcy proceeding, and hence were wiped out as liens by bankruptcy.

The right of the trustee to thus avoid such liens was not increased by his ability to enforce the attachment lien for the benefit of the estate, as he was not pursuing property to which any such lien had attached by actual levy. But the existence of the attachment, which was also wiped out by bankruptcy, shows that the four months period affects the equitable liens as well, for their date of enforcement was established by the date of those legal proceedings; i. e., the issuance of executions or the obtaining of judgments, giving the right to proceed by suit or levy directly against the property of the American Candy Manufacturing Company. These dates were all within the four months period, and the person seeking to acquire superior rights on those dates lost any claim to a preference or priority when bankruptcy intervened.

.This is not a case of following a specific res subject to an admitted lien. It is rather a determination of the extent or effect of one lien, as against others, all of which are traced to the general fund.

The report must be set aside, and the claimants held to be general creditors of the American Candy Manufacturing Company.